UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation,<br><br>Plaintiff<br><br>v.<br><br>BIG TOWN MECHANICAL, LLC, a Nevada limited liability company; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation; DOES I through X; and ROE CORPORATIONS I-X; inclusive,<br><br>Defendants | 2:13-cv-00380-JAD-GWF<br><br>**Order Denying Defendants' Motion for Partial Summary Judgment**<br><br>[ECF No. 89] |

This case is a battle between two sureties over who should foot the bill for a project that ended up costing more than anyone expected. Clark County School District hired defendant Big Town Mechanical, LLC to modernize the heaters and air conditioners in several Clark County elementary schools.[1] The district required Big Town to purchase a bond guaranteeing that it would finish the job; Big Town bought that bond from defendant Travelers Casualty and Surety Company of America.

Big Town then got to work—or rather, it hired subcontractor F.A.S.T. Systems to do the work. Big Town, like the district, wanted a bond from F.A.S.T. guaranteeing that it would complete the project. F.A.S.T. bought its bond from plaintiff Fidelity and Deposit Company of Maryland. Thus: Travelers promised the district that Big Town would finish the repairs; Fidelity promised Big Town that F.A.S.T. would finish the repairs.

The project ended up being tougher than expected, and F.A.S.T. fell through. So Fidelity took the project over and spent significant funds attempting to complete it. But Fidelity's

---

[1] ECF No. 1 at ¶ 6.

subcontractors, too, failed, so Travelers stepped in and hired new contractors, spent more money, and completed the job to the district's specifications.[2]  All in all, everyone spent more on the repairs than they expected.

Fidelity sues Big Town and Travelers, seeking to be reimbursed for the money it spent trying to finish the project.  Travelers counterclaims, arguing that Fidelity must cover the whole bill because it did shoddy work in the first place.  Among other things, Fidelity defends against these counterclaims by arguing that its bond with Big Town caps its potential liability in this case.  Travelers now brings a motion for partial summary judgment, seeking a ruling that if Fidelity is eventually found liable on some theory, the set sum in its bond will not cap its liability.  I deny Traveler's motion because it is premature.

**Discussion**

Generally, a surety on a performance bond promises that another party will complete some performance—and that if they do not, the surety will pay up to a sum-certain amount to cover that default (the penal sum).[3]  Here, Fidelity promised Big Town (and now Travelers, standing in its shoes) that F.A.S.T. would complete the school repairs, and that if it did not, Fidelity would cover the losses caused by F.A.S.T.'s default (up to a set sum).[4]

But some courts treat this process differently when, instead of acting as a passive bankroll for losses caused by a default, the surety elects to take over for the defaulting party and complete the performance itself.[5]  The advantage to the surety is that it can try to keep costs low so that it does not

---

[2] I find these motions suitable for disposition without oral argument.  Nev. L.R. 78-1.

[3] *Archer W. Contractors, LLC v. Int'l Fid. Ins. Co.*, 2017 WL 882401, at *3 (S.D. Cal. Mar. 6, 2017).

[4] The original project was broken up into several pieces, and the parties entered into multiple, identical bonds with varying penal sums.  Because the bonds are all identical for relevant purposes, I treat them together for purposes of this order.

[5] *Caron v. Andrew*, 284 P.2d 544, 549 (Cal. 1955); *see also Vander Kley v. Acstar Ins. Co.*, 256 F. App'x 905, 906–07 (9th Cir. 2007) (holding that a surety takes on the obligations of its principal when it takes over its performance); *Employers Mut. Cas. Co. v. United Fire & Cas. Co.*, 682 N.W.2d 452, 457 (Iowa Ct. App. 2004) ("When a surety assumes the performance of the contract, the surety becomes subrogated to the rights of the principal, and necessarily becomes subject to the

have to pay out the bond's entire penal sum.  On the other hand, the surety, now standing in the shoes of its principal, may have opened itself to the various liabilities its principal faced in performing under its original contract:

> Upon breach by the principal, the surety is, unless otherwise specifically provided in the contract, free to rest upon the contract of suretyship and if it does it cannot be held beyond the limit of its bond and it may invoke any defense open to it as surety.  If, however, upon breach by the principal it elects to . . . step into the place of its principal and perform that principal's contract, it then makes itself subject to the principal's liabilities.[6]

And in the event that the surety uses up all the money in the bond and still fails to complete performance, it may open itself to another sort of claim: breach of the bond itself.[7]  Parties to a bond can sue for breach of that bond, just like any other contract.  The beneficiary can claim that the surety improperly used the bond's funds—or, in other words, that the beneficiary would have used that money more wisely to accomplish more.[8]

But although Fidelity is not wholly shielded by its bond from any potential liability, I cannot give Travelers the answer that it seeks because the nature of its claims is not yet sufficiently developed.  To the extent that Travelers argues that Fidelity cannot have *any* protection under the bond because it opted to do some work on the project, that position is not supported either by authority or the bond's language.[9]  Both parties make much out of language in the bond, but its terms

---

principal's liabilities."); *Federal Sur. Co. v. Lalonde*, 31 F.2d 673, 674 (9th Cir. 1929) (finding surety who took over work from contractor may be liable in excess of penalty bond).

[6] *Id.*

[7] *Penick-Nordic, JV v. Interstate Plumbing & Air Conditioning, LP*, 2013 WL 12114012, at *5 (C.D. Cal. June 6, 2013).

[8] For example, Travelers might establish that Fidelity cannot offset the bond's penal sum with its unreasonable expenses—and thus that although the bond's penal sum still applies, Fidelity is still liable for the entire bond amount.  I simply cannot say at this juncture.

[9] None of Travelers' cases hold that the bond's penal sum is totally nullified because the surety elected to start performing for the principal, they just hold that the surety can become liable under the principal's original contract.  *See E. Quincy Servs. Dist. v. Gen. Accident Ins. Co. of Am.*, 88 Cal. App. 4th 239, 244 (Cal. Ct. App.2001) (holding that once a surety elects to perform for its principle, it can be liable for breaching the principal's contract); *Caron*, 284 P.2.d at 544 (same); *Employers*

shed no additional light in this murk.  Bonds are governed by general contract principles.[10]  And the bond's plain language says only two relevant things: (1) if Big Town completed the performance on its own, it could seek reimbursement from Fidelity up to the bond's penal sum; and (2) if Fidelity completed the performance on its own, it could seek reimbursement up to the price of the original contract between Big Town and F.A.S.T..[11]  What the bond does not expressly say is what happens when Fidelity either wastes the bond's money or commits additional breaches of its own.

Depending on how this case proceeds, Fidelity's liability may indeed by capped by its bond's penal sum.  If Travelers ultimately seeks to be reimbursed under the bond, and it cannot show that Fidelity breached the bond, the cap might apply.  If Travelers fails to establish that Fidelity committed any other breach—and it turns out that the project was simply more expensive than anyone expected—it may be that the bond's penal sum applies because both parties are entitled to offsets for the work they did.  On the other hand, if Travelers establishes that Fidelity independently breached the bond or that it breached F.A.S.T.'s contract—the cap might not apply.  The uncertainty created by these alternative scenarios is compounded by the fact that when Travelers filed this motion discovery was still ongoing, leaving significant gaps in the record.[12]

Travelers' motion effectively asks me for an advisory opinion: will Fidelity be shielded by its bond's penal sum in any of several alternative circumstances that may or may not come to pass in this case?  The federal courts are not empowered to issue advisory opinions and I decline to guess at this hypothetical.[13]  If Travelers succeeds on some claims, the cap might not apply; if it succeeds on others, it may.  That determination will turn on the nature of the claims Travelers succeeds on, and

---

*Mut. Cas. Co.*, 682 N.W.2d at 457 (holding that surety became potentially liable under its principal's contract once it took over contract).

[10] *Union Indem. Co. v. Lang*, 71 F.2d 901, 906 (9th Cir. 1934).

[11] ECF No. 1 at ¶ 11.

[12] Indeed, Fidelity argues that Traveler's motion should be denied under Fed. R. Civ. P. 56(d) (and attaches a supporting declaration) because of these outstanding factual questions.  I agree.

[13] *F.C.C. v. Pacifica Found.*, 438 U.S. 726, 735 (1978).

precisely how it frames those claims as this case proceeds. The parties and I will benefit from briefing that takes into account any new factual developments during the last year of discovery.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' **motion for partial summary judgment (ECF No. 89) is DENIED.**

IT IS FURTHER ORDERED that the deadline for the parties to file motions for summary judgment is extended until 45 days from the filing of this order.

Dated this 23rd day of March, 2017.

_____
Jennifer A. Dorsey
United States District Judge