**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

FIDELITY AND DEPOSIT COMPANY
OF MARYLAND, a Maryland corporation,

    Plaintiff,

vs.

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA, et al.,

    Defendants.

Case No. 2:13-cv-00380-JAD-GWF

**ORDER**

**Re: Motion to Disqualify (ECF No. 252)**

  This matter is before the Court on Defendant Travelers Casualty and Surety Company's Motion to Disqualify Counsel (ECF No. 252) filed on July 11, 2017. Plaintiff Fidelity and Deposit Company filed its Opposition (ECF No. 257) on July 25, 2017, and Defendant filed its Reply (ECF No. 263) on August 1, 2017. The Court conducted a hearing in this matter on August 14, 2017.

**BACKGROUND**

  Defendant Travelers Casualty and Surety Company ("Travelers") moves to disqualify Plaintiff's counsel, the law firm of Kolesar & Leatham and attorneys employed by that law firm, based on an alleged conflict of interest arising from related litigation.

  The Clark County School District ("School District" or "CCSD") filed a civil complaint in this court against Travelers on June 21, 2013, and thereafter filed an amended complaint on August 19, 2013. *See Clark County School District v. Travelers Casualty and Surety Co.*, Case No. 2:13-cv-1100-JCM-PAL, ECF Nos. 1 and 9. The School District was represented in that action by the law firm of Kolesar & Leatham. The School District alleged that it contracted with Big Town Mechanical Company ("Big Town" or "BTM" ) pursuant to the competitive bid process, to perform modernization work on fifteen

elementary schools. The modernization work included the heating, ventilating and air conditioning ("HVAC") systems in the schools. *Amended Complaint* (ECF No. 9), at ¶ 5. Defendant Travelers issued performance bonds on behalf of Big Town, naming the School District as obligee. *Id.* at ¶¶ 12, 15. The School District alleged that beginning in the fall of 2010, Big Town began defaulting on its obligations to timely and sufficiently complete work on some of the schools, including failing to program the HVAC systems in some of the schools. *Id.* at ¶¶ 18-23. Eventually by November 2012, Big Town defaulted on all of the fifteen school modernization contracts. *Id.* at ¶¶ 26-27. In May 2013, Big Town filed for bankruptcy. *Id.* at ¶ 32. The School District alleged that Travelers caused delays and contributed to Big Town's defaults by contending that it was entitled to the remaining contract monies. *Id.* at ¶¶ 28-30. The School District further alleged that Travelers breached its duty to perform, repair and complete Big Town's work under the contracts as guaranteed by the performance bonds. *Id.* at ¶¶ 32-45. The School District sought a mandatory injunction to compel Travelers' performance under its bond, and damages for breach of contract, contractual breach of the covenant of good faith and fair dealing, tortious breach of the covenant of good faith and fair dealing, and declaratory relief. *Id.* at ¶¶ 46-78.

Travelers filed an amended counterclaim against the School District on August 6, 2015 in which it alleged that Big Town's ability to perform under its contracts was impaired by the acts or omissions of the School District. Travelers alleged that the School District failed to pay all amounts due under the contracts and for change order work and extra work; delayed and disrupted Big Town's work; issued defective and/or deficient contract documents; and caused delays and disruptions and additional costs associated therewith. *Amended Counterclaim* (ECF No. 107), ¶ 12. Travelers alleged that but for the delays and disruptions caused by the School District, Big Town "fulfilled all obligations under each of the Contracts, or was excused by the actions and omissions of CCSD from doing so." *Id.* at ¶ 21.

On February 1, 2016, the School District and Travelers entered into a written Settlement Agreement and Release. *Motion to Disqualify* (ECF no. 252), *Exhibit 1* ("Settlement Agreement"). The Settlement Agreement recited that the School District and Travelers entered into a takeover agreement on December 19, 2013 regarding Travelers' completion of the work, and that Travelers entered into a contract with Sletten Construction Co. on that same date to complete the projects, and that the projects were now fully complete. *Id.* at ¶¶ E and F. Pursuant to the Settlement Agreement, Travelers agreed to

pay $5 million to the School District in addition to the contract retention amount(s) which the School District was entitled to keep. *Id.* at pg. 2, ¶ 2(a). The Settlement Agreement further stated:

> <u>Assignment</u>. In exchange for and effective ten (10) business days after Travelers' payment to CCSD of the Settlement Payment and retroactive to the Effective Date, CCSD assigns, transfers, and conveys to Travelers all of CCSD's rights arising out of or related to the Contracts with BTM, the Projects, the BTM Claims, on the Projects, and the Action (as well as all related damages in connection therewith), including but not limited to all direct costs, resultant damages, liquidated damages (including the LDs set forth in Exhibit C), interest and fee claims thereon. The purpose of this assignment is to give Travelers the ownership of and the right to assert any and all claims that CCSD has asserted and/or could have asserted in any ongoing or future dispute/litigation that Travelers is or may eventually be involved in. The Parties agree that this assignment does not affect CCSD's ownership of equipment and renovations that BTM installed/performed on the projects.

*Id.* at ¶ 2(c).

The School District also agreed to use its best efforts to make its current employees reasonably available to Travelers so long as it does not impose an undue burden on the School District. *Id.* at ¶ 2(d).

Plaintiff Fidelity and Deposit Company of Maryland ("Fidelity" or " F&D") filed its complaint in this action against Big Town and Travelers on March 6, 2013. *Complaint* (ECF No. 1). The complaint was filed on Fidelity's behalf by attorneys Kurt C. Faux and Willi Siepmann of The Faux Law Group who continue to be counsel of record in this lawsuit. Fidelity alleged that it issued performance and payment bonds on behalf of F.A.S.T. Systems, Inc. ("FAST") which had entered into subcontracts with Big Town to perform the modernization work on the HVAC systems in five of the schools subject to the general contracts between the School District and Big Town. FAST subsequently defaulted on its subcontracts and Big Town demanded that Fidelity meet its obligation under its bonds. Fidelity thereafter arranged for the completion of FAST's work on the subcontracts and made payments under the bonds issued on behalf of FAST. Fidelity alleged that while completing FAST's work on the subcontracts, it "repeatedly demanded that Big Town provide an accounting of the balance of the subcontract price as required by the [bonds]" and that Big Town refused to provide an accounting or pay Fidelity the balance of the subcontract prices as required by the bonds. *Id.* at ¶¶ 14, 15, 20, 21, 26, 27, 32, 33, 38, 39. Fidelity asserted causes of action for an accounting and for breach of contract, and a claim against Travelers on its bonds.

1 On July 18, 2014, Travelers filed a counterclaim against Fidelity. *Counterclaim* (ECF No. 47). Travelers alleged that Fidelity was obliged to complete the entirety of FAST's subcontract work without regard to the penal sums of its bonds. *Id.* at ¶ 16. Travelers further alleged that FAST's subcontract work was not complete and did not comply with the project plans and specifications. Travelers alleged that as a result, it "has or will have to pay an estimate in excess of $1,000,000 to repair and replace work performed by FAST/Perini and to complete FAST's Subcontract scope of work on the Projects." *Id.* at ¶ 20.[1]

On February 2, 2017, Fidelity, Travelers, and Third Party Defendant Controlco participated in a private mediation conference in an effort to settle this case. The mediation was not successful. *Statement re Unsuccessful Mediation* (ECF No. 145). Thereafter on March 16, 2017, attorneys Alan J. Lefebvre, William D. Schuller and Colby L. Balkenbush of the law firm of Kolesar & Leatham entered their appearance as counsel for Fidelity. *Notice of Appearance* (ECF No. 148). That same day, Mr. Balkenbush sent Travelers' counsel a lengthy letter addressing alleged deficiencies in Travelers' discovery responses and other discovery issues. *See Motion to Compel* (ECF No. 168), *Exhibit 3*. On March 24, 2017, Travelers' counsel sent an email to Fidelity's attorney Kurt Faux stating that Travelers would be filing a motion that day to disqualify Kolesar & Leatham. *Opposition to Motion to Disqualify* (ECF No. 257), *Exhibit 2*, pg. 4. Also on March 24th, Mr. Balkenbush sent an email to Travelers' counsel stating that Fidelity would not agree to stay or postpone discovery pending the filing and decision on a motion to disqualify counsel. *Id.* at *Exhibit 2*, pg. 2.

On March 28, 2017, Mr. Balkenbush sent an email to Travelers' counsel regarding matters discussed by them on March 27th. The email states: "Finally, you indicated that while Travelers is still considering filing a motion to disqualify Kolesar & Leatham from representing F&D in this litigation for the time being Travelers has elected not to file said motion. You indicated that Travelers reserves the right to file said motion in the future." *Id.* at *Exhibit 2*, pg. 1.

On March 28, 2017, Travelers sent a letter to the School District in which it stated that Kolesar & Leatham's "[use of] work product and files in the F&D litigation that belong to and were paid for by

---

[1] Perini was the contractor that Fidelity hired to complete FAST's subcontract work.

4

CCSD as part of its litigation against Travelers exposes CCSD to breach of the settlement agreement." *Motion to Disqualify* (ECF No. 252), *Exhibit 2*. Travelers based this assertion on the assignment provision in paragraph 2(c) of the Settlement Agreement, and also on paragraph 5(c) which provides that "'Each Party agrees to take all reasonable steps necessary to effectuate the terms of the Agreement.'" Travelers stated that "unless CCSD instructs its former counsel to cease and desist its representation of F&D in the F&D Litigation, we will look to CCSD for recovery of any and all damages due to the breach of the settlement agreement." *Id.*

The School District's general counsel forwarded Travelers' letter to Kolesar & Leatham which responded to the School District by letter dated March 31, 2017. *Opposition* (ECF No. 257), *Exhibit 3*. Kolesar & Leatham stated that the Settlement Agreement between the School District and Travelers did not assign attorney work product to Travelers and that, in any event, the School District's or Kolesar & Leatham's attorney work product was disclosed on the record in the School District vs. Travelers lawsuit. Second, Kolesar & Leatham asserted that the School District did not have any direct cause of action against Big Town's subcontractors because there was no privity of contract between them. Therefore, no such claims could have been assigned by the School District to Travelers in the Settlement Agreement. Kolesar & Leatham also noted that Travelers filed its counterclaim against Fidelity before the settlement agreement between the School District and Travelers and that its claims against Fidelity did not rest on the assignment of the School District's rights.

On April 5, 2017, the School District's general counsel advised Travelers that his "ability to direct outside counsel's actions ceased when the case did and the agency status expired. Kolesar & Leatham, as former counsel in the case, lacks any present capacity on behalf of CCSD in your matter and CCSD is not responsible for its actions." *Motion to Disqualify* (ECF No. 252), *Exhibit 3*. On June 2, 2017, Travelers sent a letter to the School District's general counsel stating that it still believed the School District was in breach of the settlement agreement by failing to instruct Kolesar & Leatham to withdraw from Fidelity's representation in this lawsuit. Travelers again requested that the School District instruct Kolesar & Leatham to withdraw. *Motion to Disqualify* (ECF No. 252), *Exhibit 4*. The School District's counsel responded on June 7, 2017, stating that "[t]here is nothing in the settlement agreement which provides that the CCSD has control over the subsequent actions of a former counsel. If

1  you believe that Kolesar and Leatham have a conflict of interest in your current case, you certainly have
2  the right to file a motion with the Court to have the firm disqualified." *Motion to Disqualify* (ECF No.
3  252), *Exhibit 5*. On June 16, 2017, Travelers sent a letter to the School District's general counsel
4  memorializing a telephone conversation on June 7th. The letter stated that "while CCSD does not
5  believe it has any ability to control the actions of its former counsel, CCSD has no objection to
6  Travelers' seeking to disqualify CCSD's former counsel Kolesar & Leatham[.]" *Motion to Disqualify*
7  (ECF No. 252), *Exhibit 6*.

## **DISCUSSION**

Motions to disqualify counsel present a delicate and sometimes difficult balancing task. *Kelly v. CSE Safeguard Ins. Co.*, 2010 WL 3613872, at *1 (D.Nev. Sept. 8, 2010) (citing *Brown v. Eighth Judicial Dist. Ct.*, 116 Nev. 1200, 14 P.3d 1236, 1269-70 (Nev. 2000)). Close cases are resolved in favor of disqualification. However, "'[p]articularly strict judicial scrutiny' should be given to a motion to disqualify opposing counsel because there is a significant possibility of abuse for tactical advantage." *Id.* (citing *Optyl Eyewear Fashion Int'l Corp. v. Sytle Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985)). The moving party bears the burden of establishing an ethical violation or other factual predicate upon which the motion depends. *Id.* (citing *United States v. Walker River Irr. Dist.*, 2006 WL 6288823, at *3 (D.Nev. March 10, 2016)). *See also IPATT Group, Inc. v. Scotts Miracle-Gro Co.*, 2013 WL 3043677, at *13 (D.Nev. June 17, 2013) and *Sanders v. Laboratory Corp. of America*, 2011 WL 4834452, at *2 (D.Nev. Oct. 11, 2011).

Travelers argues that Kolesar & Leatham should be disqualified from representing Fidelity in this action based on Rule 1.9 of the Nevada Rules of Professional Conduct which states in part as follows:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> . . .
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) Use information relating to the representation to the

> disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) Reveal information relating to the representation except as these Rules would permit or require with respect to a client.

For a potential disqualifying conflict to exist under Rule 1.9, the moving party must establish (1) that it had an attorney-client relationship with the lawyer, (2) that the former matter and the current matter are substantially related, and (3) that the current representation is adverse to the party seeking disqualification. *Nevada Yellow Cab Corp. v. Dist. Ct.*, 123 Nev. 44, 152 P.3d 737, 741 (2007).

Generally, courts will not disqualify an attorney for a conflict of interest unless the former or present client moves for disqualification. *Sentry Select Ins. Co. v. Meyer*, 2011 WL 110333, at *7 (D.Nev. March 23, 2011) (citing *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976)). A non-client may move to disqualify an attorney for conflict of interest only under limited circumstances. First, the non-client must show that it has a personal stake in the motion because of an ethical breach that so infects the litigation that it impacts the moving party's interest in a just and lawful determination of its claims. The alleged injury to the non-client must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Colyer v. Smith*, 50 F.Supp.2d 966, 971-72 (C.D.Cal. 1999)). *Sentry* stated that the court may also disqualify an attorney from representing a particular client in order to preserve the integrity of the bar. *Id.* (citing *Coles v. Arizona Charlie's*, 973 F.Supp. 971, 973 (D.Nev. 1997)). These exceptions must be narrowly construed, however, so that they do not swallow the general rule. *Sherman v. CLP Resources, Inc.*, 2015 WL 13542762, at *3-4 (C.D.Cal. Feb. 4, 2015).

Travelers' motion to disqualify Kolesar & Leatham falters on the first element of the test set forth in *Nevada Yellow Cab*. Kolesar & Leatham did not actually represent Travelers in a substantially related matter.[2] In fact, it represented the School District in a related lawsuit *against* Travelers. Travelers

---

[2]To find that matters are substantially related, the court must (1) make a factual determination concerning the scope of the former representation, (2) evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters, and (3) determine whether the information is relevant to the issues raised in the present litigation. *Waid v. Dist. Ct.*, 121 Nev. 605, 119 P.3d 1219, 1223 (2005).

attempts to bootstrap itself into an attorney-client relationship with Kolesar & Leatham by virtue of the assignment of the School District's rights "arising out of or related to the Contracts with BTM, the Projects, the BTM Claims on the Projects, and the Action." *Settlement Agreement*, ¶ 2(c). Travelers cites the common law rule that "'an assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with the same legal rights as the assignor had before assignment." *First Fin. Bank v. Lane*, 130 Nev.Adv.Op. 96, 339 P.3d 1289, 1293 (quoting *Interim Capital LLC v. Herr Law Group, Ltd.*, 2011 WL 7047062, at \*6 (D.Nev. Oct. 21, 2011)). Travelers' counterclaim against Fidelity, however, does not arise from the assignment of the School District's rights against FAST or its surety, Fidelity. Travelers' claims arise from the subcontract between Big Town and FAST, and Travelers' and Fidelity's respective rights and obligations as sureties. This, of course, is evidenced by the fact that Travelers' filed its counterclaim against Fidelity a year and half before the School District and Travelers entered into their settlement agreement and dismissed the action between them. Travelers has therefore failed to establish that it stands in the shoes of the School District in pursuing its claims against Fidelity, or in defending against the claims asserted by Fidelity.[3]

During their representation of the School District, Kolesar & Leatham attorneys may have acquired information that is useful in prosecuting Fidelity's claims and defending against Travelers' counterclaims in this lawsuit. Kolesar & Leatham did not acquire such information, however, as a result of access to Travelers' confidential information. Neither *Nevada Yellow Cab* nor the other cases cited by Travelers support the disqualification of a Kolesar & Leatham based on the facts of this case.

In *Nevada Yellow Cab*, the law firm was retained by the cab company's insurance company to defend the insured in a bodily injury action. During that representation, the interests of the cab company and the insurer were aligned against the plaintiff. Although the law firm only formally represented the cab company, the court held that it also had an attorney-client relationship with the insurer. 152 P.3d at 742. After the bodily injury case was settled for an amount in excess of the insurance policy limits, the

---

[3]The Settlement Agreement between the School District and Travelers does not bar Kolesar & Leatham from representing other persons against Travelers with respect to claims arising out of the same project. If Travelers wanted to prevent Kolesar & Leatham from doing so, it could have made this a condition of its settlement with the School District.

law firm filed a bad faith lawsuit on behalf of cab company against the insurer. Because it could be reasonably inferred that the attorney obtained confidential information regarding the insurer's handling of the liability claim during the defense of the underlying action, the Nevada Supreme Court affirmed the district court's order disqualifying the law firm. *Id.* Even under these circumstances, the concurring justice considered disqualification to be "a close case." *Id.* at 743 (Maupin, C.J., concurring).

In *Foley-Ciccantelli v. Bishop's Grove Condo. Ass'n*, 797 N.W.2d 789 (Wis. 2011), the plaintiff's attorney had previously represented the property manager of the defendant condominium association against whom the plaintiff was asserting a bodily injury claim. The plaintiff listed the property manager as a witness who would testify about the maintenance of the subject property. Given the agency relationship between the defendant condominium association and the property manager, and the possibility that plaintiff's counsel could have acquired special insight into how the manager operated and managed the condominiums that could be used against the defendant, the court held that defendant had standing to move for the disqualification of plaintiff's counsel. *Id.* at 807-08. The court, however, reversed the lower court order disqualifying the attorney due to the "appearance of impropriety." The court further stated that there were insufficient facts in the record to support disqualification under Rule 1.9 and it therefore remanded the case for further factual determination. *Id.* at 816.

In *FMC Technologies, Inc. v. Edwards*, 420 F.Supp.2d 1153 (W.D.Wash. 2006), the plaintiffs initially sued two defendants, Wattles and Edwards, for misappropriation of trade secrets. Both defendants were represented by the same law firm. That lawsuit was dismissed after both defendants swore under oath that they did not take plaintiffs' trade secrets. Wattles later disclosed to plaintiffs that he had, in fact, taken their trade secrets and given them to Edwards. The plaintiff thereupon filed a second lawsuit against Edwards, and identified Wattles as a witness in the new action. The same law firm that had represented both defendants in the first action, now represented Edwards in the second action. In holding that the plaintiffs had standing to move for disqualification of defendant's counsel, the court stated:

> The Court finds that in the present case, Plaintiffs have shown that the ethical conflict at issue here sufficiently impacts the "just and lawful determination" of their claims and that the conflict involved is so intertwined with the current litigation that this Court must consider Plaintiffs' motion to disqualify Defendants' counsel. Here, defense

> counsel Newman & Newman's former client, Mr. Wattles is not a party, but he is now the key witness for Plaintiffs, whereas in FMC I, he was a defendant, aligned with the position of Defendants in the instant litigation. Moreover, the current suit is inextricably linked to the FMC litigation where Mr. Wattles was represented by Newman & Newman. For these reasons, the Court finds that Plaintiffs have met the standing requirement. Further, because the motion has merit, . . . the Court has a "plain duty to act."

420 F.Supp.2d at 1157.

After concluding that the first and second actions were substantially related, the court found that the law firm's representation of the defendants in the second action would be materially adverse to its former client Wattles. The court stated:

> That Newman & Newman will be cross-examining its former client about *exactly* the same issues, regarding which Newman & Newman formerly represented Mr. Wattles as he maintained an *opposite* position, is enough to establish adversity. Parties are allowed to switch sides; lawyers are not. As the Third Circuit has put it, "[c]onflicts of interest arise whenever an attorney's loyalties are divided, and an attorney who cross-examines former clients inherently encounters divided loyalties." *United States v. Stewart*, 185 F.3d 112, 121 (3d Cir. 1999)*; see also* Model Rules of Prof'l Conduct R. 1.7 cmt. 6. This is particularly so when cross-examination will involve the precise matters that were the subject of the former representation.

*Id.* at 1160.

The court further stated: "[T]his is not simply a matter of a law firm taking a later case that merely involves a former client—rather, it is about taking a later case that *depends on discrediting a former client on matters that were the subject of the former representation.* In the face of such a clear violation of the RPCs, the Court finds disqualification not only justified, but essential." *Id.* at 1162.

Kolesar & Leatham has arguably "switched sides" to the extent that the positions it takes on behalf of Fidelity against Travelers are contrary to the positions it took on behalf of the School District in its action against Travelers. Although the School District has been placed on notice of this litigation and has twice been requested by Travelers to instruct Kolesar & Leatham to withdraw, the School District has not done so. Travelers has not shown that testimony by School District personnel will be material to the issues in this case, and that Kolesar & Leatham will inevitably be placed in the position of discrediting School District employees on matters that were the subject of its prior representation of the School District. Travelers has therefore not shown that Kolesar & Leatham has such a clear conflict

of interest that infects the litigation so as to impact its interest in a just and lawful determination of the case.

Fidelity also argues that Travelers' motion to disqualify is untimely and that it will suffer substantial prejudice if Kolesar & Leatham is disqualified. These assertions must be considered in the context of the merits of the disqualification motion itself. Travelers' counsel promptly notified Fidelity of its intention to seek Kolesar & Leatham's disqualification shortly after it entered its appearance in this matter in March 2017. There appears to have been discussion about seeking a stay of discovery until the disqualification issue was resolved. Fidelity, however, refused to agree to a stay, and Kolesar & Leatham moved forward with aggressively litigating the case and generating substantial attorney's fees in the process. Travelers in the meantime deferred filing the motion to disqualify while it unsuccessfully attempted to persuade the School District to instruct Kolesar & Leatham to withdraw. Travelers should have promptly filed its motion to disqualify after the School District notified it on April 7, 2017 that it was not responsible for Kolesar & Leatham's actions and impliedly declined to instruct it to withdraw. Travelers, instead, waited three more months before filing the motion to disqualify. While a party or its lawyer cannot evade a valid basis for disqualification by having the lawyer embed himself in the litigation, Travelers's grounds for seeking disqualification were not strong and Fidelity and Kolesar & Leatham cannot be faulted for proceeding forward with the litigation.

## **CONCLUSION**

Defendant/Counterclaimant Travelers does not "stand in the shoes" of the Clark County School District with respect to the claims and defenses in this lawsuit. Travelers, therefore does not have standing, as an assignee of a former client of Kolesar & Leatham, to assert that Fidelity's counsel should be disqualified pursuant to Rule 1.9 of the Nevada Rules of Professional Conduct. Further, Kolesar & Leatham's role as counsel for Fidelity in this action, having previously represented the School District in

. . .

. . .

. . .

. . .

. . .

a related action, does not constitute an ethical breach that so infects the litigation that it impacts Traveler's right or interest in a just and lawful determination of its claims and defenses. Nor is disqualification required in order to preserve the integrity of the bar. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Disqualify Counsel (ECF No. 252) is **denied**.

DATED this 21st day of August, 2017.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge